Patrick M. Flatley
United States Bankruptcy Judge

Dated: Friday, March 31, 2017 3:27:15 PM

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| JAMES JIN SOO PAK and | ) | |
| CONNIE KYUNG AE PAK, | ) | Case No. 16-bk-560 |
| | ) | |
| Debtors. | ) | Chapter 7 |
| | ) | |
| SIGNATURE SPRINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 16-ap-42 |
| | ) | |
| JAMES JIN SOO PAK and | ) | |
| CONNIE KYUNG AE PAK, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

James and Connie Pak (the "Debtors") seek the dismissal of this adversary proceeding filed against them by Signature Spring, LLC (the "Plaintiff"). According to the Debtors, the court should dismiss this proceeding based upon the Plaintiff's failure to state a cause of action upon which the court can grant relief. In particular, they allege that the Plaintiff failed to make any allegations against Mrs. Pak such that the court should dismiss the complaint against her.[1] The Plaintiff asserts that the court should deny the Debtors' motion to dismiss because it adequately stated causes of action under § 523(a)(2)(A), (4), and (6).

---

[1] Notably, the Plaintiff in its supplemental briefing "specifically and from a narrower perspective, . . . moves that it may be allowed to seek relief with respect to Mr. James Pak . . . ." That statement, coupled with the paucity of allegations against Mrs. Pak, leads the court to the inexorable conclusion that this proceeding should be dismissed as against Mrs. Pak.

1

For the reasons stated herein, the court will enter a separate order granting the Debtors' motion to dismiss and dismissing the Plaintiff's complaint.

## I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a complaint should be dismissed if it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b) (incorporating Rule 12(b)(6)). To survive a Rule 12(b)(6) motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). As the Fourth Circuit has explained, the plausibility standard requires a plaintiff "to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility' of 'entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). Finally, when courts evaluate a motion to dismiss, they are to (1) construe the complaint in a light favorable to the plaintiff, (2) take factual allegations as true, and (3) draw all reasonable inferences in favor of the plaintiff. 5C Charles Wright & Arthur Miller, *Federal Practice and Procedure* § 1357 (3d. ed. 2012) (collecting thousands of cases). The court's role in ruling on a motion to dismiss is not to weigh the evidence, but to analyze the legal feasibility of the complaint. *See Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998).

## II. BACKGROUND

In August 2013, Mr. Pak incorporated Paradise Beverage USA Co., Inc. ("Paradise Beverage"), under the laws of the State of Maryland. According to Paradise Beverage's Articles of Incorporation, which the Plaintiff attached to its complaint, the Debtors were designated as the directors of Paradise Beverage. At some point thereafter, Paradise Beverage entered into an agreement with the Plaintiff whereby Paradise Beverage established a network of buyers for the Plaintiff's products in the Korean merchant community (the "Buyers").[2] According to the Plaintiff, Paradise Beverage located Buyers who sent orders directly to the Plaintiff, it shipped its

---

[2] Notably, the court is unaware of the precise terms of the subject agreement because no party has made the agreement, to the extent it exists in written form, part of the record in this proceeding.

products directly to those Buyers, and received payment directly from those Buyers. The Plaintiff paid a commission to Paradise Beverage and/or Mr. Pak based upon its sales to the Buyers.

In May 2014, Paradise Beverage, through Mr. Pak, allegedly unilaterally altered the arrangement among the parties. Thereafter, the Plaintiff received orders directly from Paradise Beverage rather than from the Buyers. Those orders instructed the Plaintiff to bill Paradise Beverage for the shipments but to ship the orders to the Buyers. Notably, that arrangement continued without incident for at least six weeks. In that regard, the record before the court is not entirely clear as to precisely when Mr. Pak altered the business relationship, but there were thirteen orders made and paid for from June 23 to July 10, 2014. The first unpaid invoice was from July 14, 2014. During the next sixteen days, Mr. Pak placed seventeen orders and paid for fourteen. Starting in August 2014, a substantial percentage of the orders placed by Mr. Pak and shipped to Buyers went unpaid.

Ultimately, the Plaintiff brought a civil action against the Debtors and other defendants in the Circuit Court for Howard County, Maryland (the "State Court"). For one reason or another, the Debtors failed to defend against the civil action, and on January 14, 2016, the State Court entered a judgment against them, jointly and severally, for $188,125.65. That amount was later reduced to $186,125.65, which the Plaintiff asks the court to determine to be nondischargeable. On May 31, 2016, the Debtors filed their voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

### III. ANALYSIS

A.  11 U.S.C. § 523(a)(2)(A).

The Debtors assert that the court should dismiss the Plaintiff's complaint against Mr. Pak because the Plaintiff failed to state a cause of action under § 523(a)(2)(A) upon which the court can grant relief. Specifically, they assert that the Plaintiff did not rely on any representation made to it by Mr. Pak, but that it relied upon Mr. Pak's experience and reputation in deciding to contract with him. Additionally, they assert that the complaint is subject to dismissal because the Plaintiff failed to plead the alleged fraud with the particularity required by Fed. R. Civ. P. 9, incorporated in this proceeding by Fed. R. Bankr. P. 7009. In response, the Plaintiff asserts that its complaint adequately states a claim under § 523(a)(2)(A); specifically, that it alleges its claim with particularity (i.e., the who, what, when, and where constituting its claim).

Section 523(a)(2)(A) excepts from discharge any debt for money or property, to the extent the debt was obtained by "false pretenses, a false representation, or actual fraud." As a threshold issue, the exception to discharge only applies if the debtor actually obtained property or money by false pretenses, a false representation, or by actual fraud. 4 *Collier on Bankruptcy* ¶ 523.08[a]. However, the benefit obtained by the debtor may be direct or indirect. *In re Goodwich*, 517 B.R. 572, 587 (Bankr. Md. 2014).

The Fourth Circuit held that a creditor asserting a claim under § 523(a)(2)(A) must prove five elements by a preponderance of the evidence—namely, "(1) false representation, (2) knowledge that the representation was false, (3) intent to deceive, (4) justifiable reliance on the representation, and (5) proximate cause of damages." *Nunnery v. Roundtree (In re Roundtree)*, 478 F.3d 215, 218 (4th Cir. 2007). However, the Supreme Court recently expanded the application of § 523(a)(2)(A) by concluding that the inclusion of "actual fraud" within the provision indicates a clear Congressional intent to except from discharge debts incurred through fraudulent actions distinct from false representations. *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (May 16, 2016). Thus, the five step analysis set forth in *Nunnery* still applies when making determinations regarding dischargeability if property was allegedly obtained by false representation or false pretense, but does not apply with regard to alleged actual fraud.

In finding that "actual fraud" can exist without a misrepresentation, the Supreme Court expanded the scope of § 523(a)(2)(A) in cases where "actual fraud" is alleged. The terms included within § 523(a)(2)(A), including "actual fraud," are interpreted as defined at common law. *Field v. Mans*, 516 U.S. 59, 69 (1995). "Actual fraud" is comprised of two parts: "actual" and "fraud." *Husky*, at 1586. At common law, "actual" "denotes any fraud that "involve[s] moral turpitude or intentional wrong." *Id.* (citing *Neal v. Clark*, 95 U.S. 704, 709 (1878). Thus, actual fraud is any fraud carried out with wrongful intent. *Id.* "Fraud" proved far more challenging to define, and while the Court noted that it generally involves "deception or trickery," it elected to refrain from "adopt[ing] a definition for all times and circumstances." *Id.* at 1586-87.

Here, the court finds it appropriate to grant the Debtors' motion to dismiss the Plaintiff's cause of action under § 523(a)(2)(A) because the Plaintiff failed to state a cause of action upon which the court can grant relief. In that regard, the court finds that the Plaintiff adequately met the pleading requirements of Rule 9, but that its allegations simply fail to allege a cause of action

4

against the Debtors. Specifically, the court finds that Mr. Pak neither made a misrepresentation to the Plaintiff nor otherwise engaged in deception or trickery relating to his agreement with the Plaintiff. Regarding Mr. Pak's representations to the Plaintiff, it appears to the court that Mr. Pak fulfilled his representation to the Plaintiff. He created a network of Buyers for the Plaintiff's products. And the arrangement continued for several weeks without incident. It is undisputed that Mr. Pak altered the distribution arrangement among Paradise Beverage, the Plaintiff, and the Buyers in May 2014. Based upon the Plaintiff's complaint, however, the court finds that the Plaintiff, despite its allegations to the contrary, had knowledge of Mr. Pak's alteration of the arrangement and took no action to stop or rectify it, presumably because it was receiving virtually all payments until August 2014. In short, the court finds that, even while drawing reasonable inferences in the Plaintiff's favor, the Plaintiff failed to state a plausible cause of action under § 523(a)(2)(A) because Mr. Pak neither made a misrepresentation to the Plaintiff nor engaged in deception when he altered the order-shipment-payment arrangement. Furthermore, although Mr. Pak unilaterally altered the order-shipment-payment arrangement, he did not hide it; in fact, he placed orders to be billed to his company, Paradise Beverage. The Plaintiff was aware of his conduct in that regard well before it incurred any loss. Thus, the court can hardly say that Mr. Pak engaged in actual fraud vis-à-vis the Plaintiff because the Plaintiff was aware of Mr. Pak's alteration of the business relationship and did not act to rectify the situation. Even if Mr. Pak breached his agreement with the Plaintiff, it was not done with deception and trickery; it was in the open.

B.  11 U.S.C. § 523(a)(4)

Mr. Pak asserts that the court should dismiss the Plaintiff's complaint against it under § 523(a)(4) because the Plaintiff fails to allege that the relationship between it and Mr. Pak exceeded an ordinary debtor-creditor relationship. As such, Mr. Pak asserts that the court must dismiss the Plaintiff's action under § 523(a)(4) because the Plaintiff failed to state a cause of action that is plausible on its face. The Plaintiff asserts that it adequately stated a cause of action for Mr. Pak's embezzlement and his fraud or defalcation while acting in a fiduciary capacity. According to the Plaintiff, the facts support its cause of action are not simply those of a failed vending relationship but rather a failed agency relationship.

Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." § 523(a)(4). Importantly, "while acting in a

5

fiduciary capacity" only qualifies "fraud or defalcation;" acts of embezzlement or larceny do not require the concomitant condition of the act while the individual is a fiduciary. Therefore, an examination of defalcation or fraud is only necessary if the Plaintiff first demonstrates that the debt arose while the Debtor was acting in a fiduciary capacity. *See In re Parker*, 264 B.R. 685, 700 (10th Cir. BAP 2001) ("The existence of a fiduciary relationship is a threshold issue under § 523(a)(4).").

1. Fiduciary Capacity

The definition of "fiduciary" for purposes of § 523(a)(4) is controlled by federal common law. *Harrell v. Merchant's Express Money Order Co. (In re Harrell)*, No. 98–1728, 1999 WL 150278, at *2–3 (4th Cir. Mar. 19, 1999). Under the federal common law, the term "fiduciary" is limited to instances involving express or technical trusts. *Id.* In an express or technical trust, "[t]he trustee's obligations must have been imposed prior to, rather than by virtue of, any claimed misappropriation of funds . . . ." *Id.* at *3. In general, the concept of a "fiduciary duty" under § 523(a)(4) applies only to technical or express trusts; it does not generally apply to fiduciary duties implied by law from the contract. *In re Bennett*, 989 F.2d 779, 784 (5th Cir.1983). For instance, there is no cause of action under § 523(a)(4) based on the existence of a constructive or resulting trust because those types of trusts serve as remedies for another's breach of duty. *E.g., Guerra v. Fernandez–Rocha (In re Fernandez–Rocha)*, 451 F.3d 813, 816 (11th Cir. 2006) ("'[C]onstructive' or 'resulting' trusts, which generally serve as a remedy for some dereliction of duty in a confidential relationship, do not fall within the § 523(a)(4) exception 'because the act which created the debt simultaneously created the trust relationship.'") (citation omitted). A technical or express trust requires there be a "fiduciary duty" with trust-type obligations that are imposed under statute or common law. *Bennett*, 989 F.2d at 785. In that regard, as explained by the Court of Appeals for the Seventh Circuit, a fiduciary relationship may be created when there is a "difference in knowledge or power between the fiduciary and principal . . . which gives the former a position of ascendancy over the latter." *O'Shea v. Frain (In re Frain)*, 230 F.3d 1014, 1017 (7th Cir. 2000) (citation omitted). Under this test, a fiduciary relationship includes any relationship that calls for the imposition of the same high standard as a trust, such as "a lawyer-client relation, a director-shareholder relation, or a managing partner-limited partner relation" because all these relationships call for the principal to "'repose a special confidence in the fiduciary.'" *Id.* (citation omitted).

6

Although the determination of whether a fiduciary duty exists to support a § 523(a)(4) cause of action is a question of federal law, "state law is relevant in determining whether a trust obligation exists." *Martinez v. Goodrich (In re Goodrich)*, No. 03–8172, 2004 WL 2758671, at *2 (Bankr.C.D. Ill. Oct. 20, 2004). "[T]he existence of a state statute or common law doctrine imposing trust-like obligations on a party may, at least in some circumstances, be sufficient to create a technical trust relationship for purposes of section 523(a)(4)." 4 *Collier on Bankruptcy* ¶ 523.10[1][d] (Alan N. Resnick & Henry J. Sommer, eds. 15th ed. rev. 2009). If such an obligation exists under state law, then "the court must look behind the provision to ascertain whether the relationship possesses the attributes required for the purposes of Section 523(a)(4)." *In re Goodrich*, 2004 WL 2758671, at *2; *see Texas Lottery Comm'n v. Tran (In re Tran)*, 151 F.3d 339, 342 (5th Cir. 1998) ("A state cannot magically transform ordinary agents, contractors, or sellers into fiduciaries by the simple incantation of the terms 'trust' or 'fiduciary.'"). Relationships demonstrating the requisite attributes have included an ambassador and the property of the ambassador's represented country, *Republic of Rwanda v. Uwimana (In re Uwimana)*, 274 F.3d 806 (4th Cir. 2001), a financial advisor committing fraud and found to be a fiduciary by default in a state court judgment, *Pahlavi v. Ansari (In re Pahlavi)*, 113 F.3d 17 (4th Cir. 1997), real estate agents handling closing funds, *Hamby v. St. Paul Mercury Indemnity Co.*, 217 F.2d 78 (4th Cir. 1954), attorneys handling client funds, *Andy Warhol Found. for Visual Arts, Inc. v. Hayes (In re Hayes)*, 183 F.3d 162 (2d Cir. 1999), a corporate officer and director mishandling corporate funds, *In re Burton*, 416 B.R. 539, 546 (Bankr.N.D.W. Va. 2009) and those acting under a power of attorney to an incompetent person, *Ostrum v. Porter (In re Porter)*, No. 03–118, 2008 WL 114914 (Bankr.N.D.W. Va. Jan. 10, 2008).

In *In re Porter*, this court considered whether an appointee of a durable power of attorney[3] acted in a "fiduciary capacity" to the grantor under § 523(a)(4). Following the Seventh Circuit, this court held that a fiduciary relationship exists under § 523(a)(4) when there is a

---

[3] In West Virginia, a power of attorney is "'an instrument granting someone authority to act as agent or attorney-in-fact for the grantor.'" *In re Richard P.*, No. 34751, 2010 WL 2723185 (W. Va. July 9, 2010) (quoting Black's Law Dictionary 1290 (9th ed. 2009)); *Napier v. Compton*, 210 W.Va. 594, 558 S.E.2d 593 (W. Va. 2001) ("'A power of attorney creates an agency and this establishes the fiduciary relationship which exists between a principal and agent.'") (citation omitted); *Frazier v. Steel & Tube Co.*, 132 S.E. 723, 724 (W. Va. 1926) ("'It is conceded that, as a general rule, a principal has the right to revoke a power of attorney at any time . . . .'") (citation omitted).

"'difference in knowledge or power between the fiduciary and principal . . . which gives the former a position of ascendancy over the latter.'" *In re Porter*, 2008 WL 114914, at *3 (quoting *In re Frain*, 230 F.3d at 1017). Employing this standard to the facts of that case, the court bifurcated when the attorney-in-fact was acting in a fiduciary capacity. When the grantor of the attorney-in-fact was competent and aware of the financial decisions being made on her behalf, the attorney-in-fact was not acting in a fiduciary capacity. *Id.* at *4. But when the grantor became incompetent, the attorney-in-fact enjoyed a position of ascendancy; consequently, the relationship transformed such that the attorney-in-fact acted in a fiduciary capacity from the time of the incompetency.

      Here, the court finds that Mr. Pak's conduct, as alleged by the Plaintiff, does not give rise to a cause of action for fraud or defalcation under § 523(a)(4). Specifically, the conduct alleged involves Mr. Pak's failure to pay for goods shipped by the Plaintiff to Buyers. Notably, however, those orders were placed by Mr. Pak according to the Plaintiff's complaint. The circumstances surrounding Mr. Pak's nonpayment thus results in nothing more than a failed vendor-vendee relationship. Even assuming the existence of principal-agent relationship between the Plaintiff and Mr. Pak, as alleged by the Plaintiff, it was not of the variety leading to a fiduciary duty or trust-like obligation by Mr. Pak to the Plaintiff.[4] For instance, before Mr. Pak altered the order-shipment-payment arrangement, he had a minimal role, and the Plaintiff did not entrust any property to him. After Mr. Pak unilaterally modified the arrangement, he became the vendee vis-à-vis the Plaintiff and the vendor vis-à-vis the Buyers such that the Plaintiff had no property interest in the funds he received from the Buyers. There is no indication that Mr. Pak received any funds as a conduit. Rather, Mr. Pak's obligation to pay the Plaintiff for the goods he purchased from the Plaintiff and resold to the Buyers was separate and apart from the Buyers' obligations to him. There is therefore no actionable allegation that a fiduciary duty existed.

---

[4] Similarly, the court rejects the Plaintiff's passing allegation in its complaint that a constructive trust of some sort formed upon the dissolution of Paradise Beverage. In that regard, the Plaintiff makes meager allegations regarding the Debtors' duties to Paradise Beverage's creditors upon its dissolution and, notably, asks for the imposition of a constructive trust "on those funds received by Paradise Beverage and owed to the Plaintiff . . . ." As the court makes clear in dismissing the Plaintiff's action under § 523(a)(4), the Plaintiff had no property interest in the funds received by Mr. Pak from the Buyers. The Plaintiff was simply left with an expectation of payment from Mr. Pak after he changed the order-shipment-payment arrangement; similar to many other vendor-vendee relationships.

Rather, in May 2014, Mr. Pak altered the order-shipment-payment relationship and began placing orders with the Plaintiff and reselling those orders to the Buyers. The court cannot perceive any fiduciary relationship between the Plaintiff and Mr. Pak that existed before he altered the order-shipment-payment arrangement. Likewise, the court perceives no change in the nature of the relationship after the alteration that would give rise to or support its characterization as one imposing a fiduciary duty upon Mr. Pak.

2. Embezzlement and Larceny

The Plaintiff also asserts that Mr. Pak embezzled funds that were paid from the Buyers and due and owing to it. "Embezzlement" under § 523(a)(4) is defined as the "fraudulent misappropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998) (citation omitted). To establish embezzlement the movant must demonstrate that "(1) the person was lawfully entrusted with property or property lawfully came into the hands of that person, and (2) the property was fraudulently appropriated." *In re Davis*, 262 B.R. 663, 671 (Bankr.E.D. Va. 2001). Fraudulent intent may be inferred from the surrounding facts and circumstances. *E.g., In re Chwat*, 203 B.R. 242, 240 (Bankr. E.D. Va. 1996); *In re Allman*, 147 B.R. 122, 125 (Bankr. E.D. Va. 1992). In contrast, "larceny" occurs under § 523(a)(4) if "the debtor has wrongfully and with fraudulent intent taken property from its owner." *In re Rose*, 934 F.2d 901, 903 (7th Cir. 1991). "Embezzlement" differs from "larceny" in that when money is embezzled, "the original taking of the property was lawful, or with the consent of the owner, while in larceny the felonious intent must have existed at the time of the taking." 4 *Collier on Bankruptcy* ¶ 523.10[2].

Consistent with the court's factual analysis that Mr. Pak was not acting in a fiduciary capacity vis-à-vis the Plaintiff, the court similarly finds that the Plaintiff had no right to the funds paid to Mr. Pak such that the Plaintiff failed to state a cause of action for embezzlement or larceny under § 523(a)(4). Specifically, after May 2014, Mr. Pak essentially ordered product from the Plaintiff and resold it to the Buyers. But for Mr. Pak's direction for the Plaintiff to ship the product directly to the Buyers, the relationship would have been like many others where a vendor purchases product from a supplier and then resells the product to subsequent retailers or consumers. In short, the court cannot perceive a cause of action for embezzlement or larceny because the Plaintiff had no property interest in the funds paid by the Buyers to Mr. Pak. Rather,

it had only an expectation of being paid by Mr. Pak, but the money received by Mr. Pak from the Buyers was his alone.

C.  11 U.S.C. § 523(a)(6)

Section 523(a)(6) provides that a discharge in bankruptcy does not apply to any debt that arises from the "willful and malicious injury by the debtor to another entity or to the property of another entity." § 523(a)(6). The test is conjunctive—the debtor's conduct must be both willful and malicious. *E.g., In re Miera*, 926 F.2d 741, 743 (8th Cir. 1991) (noting that willful and malicious are distinct elements of § 523(a)(6) exception to discharge). For a debt to be excepted from a debtor's discharge under § 523(a)(6), "the plaintiff must prove three elements by a preponderance of the evidence: (1) that the defendant's actions caused an injury to the plaintiff's person or property, (2) that the defendant's actions were willful, and (3) that the defendant's actions were malicious." *In re Raeder*, 409 B.R. 373, 383 (Bankr. N.D.W. Va. 2009).

Section 523(a)(6)'s exception from discharge is associated with the law of intentional torts, and conduct that is negligent or reckless remains dischargeable. *Kawaauhau* v. *Geiger*, 523 U.S. 57, 60 (1998). As stated by the Court of Appeals for the Fourth Circuit:

> [Section] 523(a)(6) applies only to "acts done with actual intent to cause injury." Section 523(a)(6) is not satisfied by negligent, grossly negligent, or reckless conduct. Moreover, the mere fact that a debtor engaged in an intentional act does not necessarily mean that he acted willfully and maliciously for purposes of § 523(a)(6). "Nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."

*Duncan* v. *Duncan (In re Duncan)*, 448 F.3d 725, 728 (4th Cir. 2006).

Thus, for an injury to be "willful," the debtor must have intended the consequences of the debtor's act. More specifically, intentional conduct occurs when a debtor knows that the consequences flowing from the complained of acts are certain, or are substantially certain to occur. *Barclays American/Business Credit., Inc.* v. *Long (In re Long)*, 774 F.2d 875, 881 (8th Cir. 1985) (adopting the definition of "intentional" as stated in *Restatement (Second) of Torts* § 8A, comment b (1965)). For an act to be "malicious," the act must be targeted at the plaintiff, at "least in the sense that the conduct is certain or almost certain to cause financial harm." *Id.* at 881. A "malicious act" is "[a]n intentional, wrongful act performed against another without legal justification or excuse." *Black's Law Dictionary* 977 (8th ed. 2004). Because a debtor will rarely, if ever, admit to acting in a willful and malicious manner, those requirements may be

inferred from the circumstances surrounding the injury at issue. *St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d 1003, 1010 (4th Cir. 1985).

Here, the court finds that the Plaintiff's complaint does not state a plausible cause of action under § 523(a)(6). The act complained of by the Plaintiff is Mr. Pak's alteration of the order-shipment-payment arrangement between the Plaintiff and the Buyers, which Mr. Pak obtained for the Plaintiff.[5] Mr. Pak's alteration in that regard, however, did not immediately lead to any injury of the Plaintiff, let alone an intentional one. The Plaintiff alleges that Mr. Pak altered the arrangement in May 2014. There is no doubt that Mr. Pak's act in that regard was an intentional act, but the court does not believe that the Plaintiff puts forth sufficient allegations to support a cause of action under § 523(a)(6), which requires that Mr. Pak intend the injury to the Plaintiff. Rather, as the court noted earlier, Mr. Pak maintained relatively current with payments to the Plaintiff for several weeks before stopping. The court thus finds that the Plaintiff has failed to state a cause of action under § 523(a)(6) that is plausible on its face.

## IV. CONCLUSION

Based on the foregoing, the court finds that the Plaintiff failed to state a plausible cause of action under § 523(a)(4) and (6). The court will thus enter a separate order granting the Debtors' motion to dismiss those causes of action.

---

[5] To the extent that the Plaintiff also attempts to somehow allege that Mr. Pak's eventual failure to consistently remit payment to the Plaintiff constitutes a willful and malicious injury, the court is unpersuaded that the simple nonpayment of a debt in this context can constitute a cause of action under § 523(a)(6). Otherwise, every failed trade-credit relationship would likely to a complaint under § 523(a)(6). The court thus analyzes the sufficiency of the Plaintiff's allegations in terms of its action against Mr. Pak for altering the order-shipment-payment arrangement.